[NOT FOR PUBLICATION]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
                                        :
STONEHILL,                              :
                                        :      Civil Action No.: 06-5435 (FLW)
              Plaintiff,                :
                                        :             **OPINION**
       v.                               :
                                        :
UNITED STATES,                          :
                                        :
              Defendant.                :
_____:

**WOLFSON, United States District Judge:**

Presently before the Court is pro se Plaintiff's, Roberta L. Stonehill[1] ("Plaintiff" or

"Stonehill"), Motion for Summary Judgment in which she seeks, inter alia, judgment in the

amounts of $1,116.02 for a "wrongful diversion" from a tax refund and $464.01 that Defendant,

United States ("Defendant" or "United States"), allegedly wrongfully charged Plaintiff for

underpaying her taxes in 2002, plus all pre- and post-judgment interest; damages under § 1983;

and treble damages in the amount of $4,740.09 pursuant to the New Jersey Consumer Fraud Act,

N.J.S.A. § 56:8-2 ("NJCFA").  Stonehill also seeks sanctions under Rule 11 against Defendant,

Defendants' attorneys, and the Department of Justice ("DOJ") for continuing litigation in bad

faith and making material misrepresentations of fact to Plaintiff and the Court.  Defendant filed

Opposition and a Cross-Motion for Summary Judgment on the grounds that Plaintiff's claims are

mathematically incorrect, that Defendant only owes Plaintiff $1,272.48 as of January 16, 2009,

_____
[1]Stonehill is proceeding pro se, but she is a licensed attorney.

plus interest accruing to date, due to an overpayment for the 2003 tax year, and the Court lacks

jurisdiction to award damages against the United States.  For the reasons stated herein,

Defendant's Cross-Motion for Summary Judgment is granted and the Court awards Plaintiff

$1,272.48 as of January 16, 2009, plus interest accruing since that date, and $.02 plus interest

dating back to February 3, 2006, all of which reflects an overpayment from her 2003 tax year.

The Court further denies Plaintiff's Motion, claims for damages, and request for sanctions under

Rule 11.


## I.       Background and Procedural History

The following version of events are not in dispute unless otherwise noted.[2]

### Defendant's Original Calculations

Stonehill owed a tax liability in the amount of $38,918 for the 2002 tax year.  <u>See</u>

Martone Declaration ("Martone Decl.") ¶ 3a; Martone Decl., Ex. 1, 2002 Tax Transcript, dated

July 11, 2007 ("Ex. 1").  Stonehill's IRS tax transcript for 2002 reflects that she paid $6,000 on

April 10, 2002, $4,250 on June 13, 2002, $9,050 on September 20, 2002, $9,500 on January 9,

2003, $3,300 on September 10, 2003, and $10,452 on September 14, 2003.  Martone Decl. ¶ 3d;

Ex. 1.  On November 10, 2003, Stonehill was assessed a failure to pay tax penalty in the amount

of $252.95 and interest in the amount of $211.06, which totals $464.01, as Plaintiff failed to

---

[2]The Court is constrained to comment that the manner in which the IRS handled
Stonehill's account since 2002, <u>i.e.</u> levying accounts and issuing notices, is unfortunate, to say
the least.  The records reveal that the IRS has compounded one error after another.  And, only
after an extensive review of all documents presented by both parties, can the Court discern what
happened with Stonehill's tax records since neither side presents all of the events and
calculations in a coherent manner.

timely pay her taxes on April 15, 2003.[3]  Martone Decl. ¶ 3b; Ex. 1.  As of November 10, 2003,

Stonehill then owed $39,382.01, which is calculated by adding her original tax liability for 2002

in the amount of $38,918, plus the penalty and interest in the amount of $464.01.  Martone Decl.

¶ 3c; Ex. 1.

Although, on September 3, 2003, Plaintiff sent the IRS a quarterly estimated tax payment

of $3,300, accompanied by an IRS voucher for the 2003 third quarter tax period, Compl. ¶ 2, this

2003 quarterly payment was incorrectly credited to the 2002 tax year, which the United States

concedes.  Declaration of Beatriz T. Saiz ("Saiz Decl.") ¶ 3; see also Martone Decl. ¶ 3d; Ex. 1.

When the IRS applied the $3,300 quarterly payment to the 2002 tax year, it created an

overpayment for 2002 and an underpayment for 2003.  Def.'s Br. For Summ. J. at 2.

Accordingly, on August 27, 2004, Defendant incorrectly issued Plaintiff a refund for this 2002

overpayment in the amount of $3,299.01.  Id.; Compl. ¶ 17.  In a conclusory manner, Plaintiff

notes that the $3,299.01 "is virtually identical to the [$3,300 that was] misapplied [to the]

September 2003 payment."  Compl. ¶ 17.  Defendant, however, explains that the $3,299.01

---

[3]Although Plaintiff appears to have requested two extensions of the time to file date, she did not post any funds with that request. Ex. 1. As of April 15, 2003, Plaintiff had only paid $28,800 to the IRS. Id. Thus, she had, at that time, underpaid by $10,118. Id. On September 10, 2003, Plaintiff sent the IRS a check in the amount of $10,452, which she concedes was her final tax payment for 2002. Compl. ¶ 3; Ex. B. Plaintiff admits that her payment of $3,300 was wrongly applied to her 2002 tax year. Compl. ¶ 2. It appears that Plaintiff was assessed the $464.01 failure to pay tax penalty and interest on November 10, 2003, for her failure to pay on time. Ex. 1. Plaintiff contends that with the $3,300 payment, she overpaid in 2002 in the amount of $3,634 (which she derives by subtracting her payment of $10,452 plus the $3,300 payment for 2003 from what she admittedly owed the IRS,$10,118). Compl. ¶ 36. Plaintiff argues that she is due the $464.01 because "defendant had underpaid plaintiff on a refund" in this amount. Pl.'s Br. for Summ. J. at 6. It appears that she alleges that she did not underpay in 2002, which she contends that Defendant admitted on the phone. Id. However, as of April 15, 2003, Plaintiff's tax record reflects that she did not pay in full on time, which is why the IRS assessed her a failure to pay tax penalty, including interest, in the amount of $464.01. Ex. 1.

refund resulted from incorrectly crediting Plaintiff's check in the amount of $3,300 to 2002.

Martone Decl. ¶ 3e; Ex. 1.  Specifically, Defendant clarifies that the refund of $3,299.01 was

calculated by subtracting Stonehill's payments of $6,000 on April 10, 2002, $4,250 on June 13,

2002, $9,050 on September 20, 2002, $9,500 on January 9, 2003, $3,300 on September 10, 2003,

and $10,452 on September 14, 2003, (totaling $42,552) from the amount due by Stonehill

($39,382.01) for the year 2002 tax year (her $38,918 tax liability plus the $464.01 penalty and

interest for paying late) to get an overpayment of $3,169.99.  Martone Decl. ¶ 3; Ex. 1.  Then,

Defendant added the interest due to the taxpayer in the amount of $129.02 to get the amount of

$3,299.01 which it refunded to Stonehill.  Id.[4]

     Plaintiff's 2003 tax liability was in the amount of $6,077.  Martone Decl., Ex. 2, 2003 Tax

Transcript, dated July 11, 2007 ("Ex. 2").  According to the 2003 tax transcript, the following

payments and/or credits were applied to the 2003 tax year: $900 on June 12, 2003, $1,924 on

October 14, 2004, $1,116.02[5] on April 15, 2005.[6]  Martone Decl. ¶ 3g; Ex. 2.  Thus, by

---

     [4]As discussed herein, Defendant admits that it should have applied Plaintiff's $3,300
payment to the 2003 tax year.  Id. ¶ 3; Def.'s Br. For Summ. J. at 4; pages 7-9, infra.

     [5]At the heart of the parties' arguments, but poorly explained by both sides, is this
$1,116.02 "payment."  On February 5, 2006, the IRS applied a "refund" in the amount of $5,581
to Stonehill's 2002 tax transcript as a "prior tax abated tentative carryback claim", from which it
appears to have deducted $1,116.02.  See Ex. V; Ex. 1.  This deduction, which the IRS deemed
an "overpayment credit" was originally applied to Plaintiff's 2002 tax year on April 15, 2005,
Ex. 1, which the IRS then transferred to Plaintiff's 2003 tax year on the same date.  Martone
Decl., Ex. 2, 2003 Tax Transcript, dated July 11, 2007 ("Ex. 2").  Although the Court cannot
discern how or why this deduction occurred prior to the original posting of the refund, the parties
do not dispute that the IRS owed Stonehill a refund in the amount of $5,581 for an adjustment on
her taxes.  See Ex. V; Ex. 1.  Nor do the parties dispute that $1,116.02 was withheld from the
refund check.
     Due to this deduction in the amount of $1,116.02, Plaintiff was ultimately issued a refund
in the amount of $4,464.98 on February 3, 2006.  Ex. U; Ex. V.  The remaining $1,116.02 is the
very amount in dispute here.  Plaintiff seeks to recoup this amount from the IRS.  While the IRS

Defendant's calculations, Plaintiff underpaid in 2003.

### Subsequent Events After Misapplication of Plaintiff's 2003 Check

Defendant issued a "Notice" to Plaintiff on November 15, 2004, stating that she overpaid in the 2002 tax year and underpaid in the 2003 tax year. Compl. ¶ 8; Ex. G. Specifically, the letter indicated that Plaintiff owed an underpayment of $3,253, a penalty of $218.57, and interest of $132.03, totaling $3,603.60. Ex. G. In response, in December 2004, Plaintiff allegedly telephoned Defendant and sent a letter via certified mail to the Penalty Abatement Coordinator in Philadelphia, contesting the IRS "Notice" she received. Compl. ¶¶ 9, 11; Ex. H. Although Plaintiff's letter requested a written response, Defendant did not respond. Id. ¶ 14; Ex. H.[7] In March 2005, Plaintiff received another "Notice" that stated that she now owed a total of

---

concedes that Plaintiff is due this amount plus interest, Defendant mistakenly omits $.02, plus interest accruing from February 3, 2006. The Court notes that this $.02 discrepancy stems from an omission by Joseph Martone, an IRS Technical Services Advisor, in his declaration. Although Martone incorrectly wrote that Stonehill's 2003 tax transcript reflects a $1,116 payment on April 15, 2005, Martone Decl. ¶ 3g, the transcript indicates that the amount applied was $1,116.02. Ex. 2. Relying on Martone's Declaration, Defendant claims that the amount due to Plaintiff is $1,116. See Def.'s Br. for Summ. J. at 5; Martone Decl., Ex. 5, Adjusted 2002, 2003 Interest & Penalty Detail Report, dated Jan. 15, 2009 ("Ex. 5"). Plaintiff, however, correctly argues that Defendant wrongfully diverted $1,116.02 from a refund she was supposed to receive. Compl. ¶ 45. Plaintiff was supposed to receive a check for $5,581 as a refund at the end of 2005, but she only received a check for $4,464.98 on February 3, 2006. Ex. U. The difference between $5,581 and $4.464.98 is $1,116.02. Further, as discussed above, Defendant's own records reflect that $1116.02 was in fact excluded from the refund check. Exs. 1 & 2. Thus, Defendant should have been making its calculations herein based on the amount of $1116.02. Accordingly, the Court makes its determination based on the correct number, including the $.02. See page 17, infra.

[6]The 2003 tax transcript also reflects a payment of $2,865 on October 26, 2005, which was paid by Plaintiff, allegedly as an accord and satisfaction, after she received "Notices" from the IRS. See pages 5-6, infra.

[7]Defendant disputes this, and the "Notice" Defendant issued to Plaintiff in March 2005 stated that it had not heard from Plaintiff since it sent her a letter in November 2004. Ex. I.

$3,724.31.  Id. at 15; Ex. I.  On April 11, 2005, Plaintiff received yet another "Notice" from Defendant that she owed $3,759.27 and notifying her that the IRS would levy on certain assets if the amount due was not paid.  Compl. ¶ 19; Ex. K.  Defendant sent additional "Notices" to Plaintiff informing her that she owed an increased amount of money due to additional interest and penalties assessed.  Pl.'s Br. for Summ. J. at 5; Exs. L, M, and Q.

On September 3, 2005, Plaintiff sent Defendant a check, certified mail, for $2,865.14 with "ACCORD FOR 2003" marked on the check, and stated in an accompanying letter that "it include[d] all sums flowing from your misapplication of any previously tendered payments. Upon acceptance of this payment, all aspects of this matter are extinguished forever."  Compl. ¶ 26; Exs. N, O, and P.  The check was honored by Plaintiff's bank on October 31, 2005, and the IRS credited it to Plaintiff's 2003 tax year on October 26, 2003.  Compl. ¶ 32; Ex. P; Ex. 2. However, on November 22, 2005, after the check was accepted, Plaintiff received a "Notice of Levy" from her bank in the amount of $4,164.25.  Id.; Ex. R.  According to Plaintiff, on December 9, 2005, Plaintiff telephoned Defendant and Defendant admitted it had underpaid Plaintiff $464.01 on a refund it issued.[8]  Compl. ¶ 36; Ex. RR at 9.  On December 16, 2005, the levy on Plaintiff's assets was released by the bank.  Compl. ¶ 38.  The next day, Plaintiff received a letter from Defendant that stated it would accept Plaintiff's offer to pay an amount of $3,603.60,

---

[8]Although Defendant denies ever admitting to owing Plaintiff a refund of $464.01, see Martone Decl. at 2; Ex. RR at 9, Plaintiff persists that Defendant admitted to owing her $464.01 during a telephone conversation with Ms. Armstrong.  Plaintiff's Certification in Lieu of Affidavit in Response to Defendants' 'Page 2' sent in June 2009 ("Pl.'s Cert. to Def.'s pg. 2") at 4; Compl. ¶ 36.  However, there is no documentary evidence that Defendant ever admitted owing Plaintiff $464.01, and in fact, in Defendant's Answer, Defendant stated that it lacked information to properly answer the question.  Ex. RR.  Defendant has not changed its response to Plaintiff's Complaint, as Plaintiff asserts.  Pl.'s Cert. to Def.'s pg. 2 at 4.

which Plaintiff alleges that she never made.  Id. ¶ 39; Ex. S.

In January 2006, Plaintiff sent Defendant Form 656, Offer in Compromise.  Compl. ¶ 40;
Ex. T.  Plaintiff did not fill out Item 7 on the form, "I/we offer to pay" because she claims it did
not fit her situation.  Compl. ¶ 42; Ex. T.  Defendant returned the form to Plaintiff because Item 7
was not completed.  Ex. X.  Plaintiff then modified the language of Item 7 and sent Form 656
back to Defendant, with an explanatory letter.[9]  Ex. W.  On April 6, 2006, Defendant again
returned Form 656 to Plaintiff, accompanied by a letter stating that it could not be processed
because Plaintiff "no longer ha[d] any outstanding liability for Tax Year 2003."  Ex. X.  Plaintiff
alleges that the reason she no longer had any tax liability for 2003 was because Defendant
"wrongfully diverted" $1,116.02 from a $5,581 refund Plaintiff was supposed to receive in
December 2005, for an adjustment on her taxes.  Compl. ¶ 45.

### Defendant's Recalculations

Defendant alleges that if the $3,300 payment had not been improperly included in the
2002 tax year, "[P]laintiff would be liable for $131.82 in unpaid interest as of September 14,
2003" for the 2002 tax year.  Defendant's Statement of Facts ("Def.'s S. of Facts") ¶ 9; Martone
Decl., Ex. 3, 2002 Interest & Penalty Detail Report, dated Jan. 15, 2009 ("Ex. 3").  This number
is calculated by taking Plaintiff's tax liability of $38,918, in 2002, and subtracting Plaintiff's
payments of $6,000, $4,250, $9,050, $9,500, leaving a liability of $10,118, as of April 15, 2003.
Id.  Thus, Plaintiff would have still failed to pay her 2002 taxes in full, on time, and should have

_____

[9]Plaintiff modified the form explaining that she had already paid the IRS $2,865.14 as
"ACCORD FOR 2003" and "there had been satisfaction for that year."  Ex. T.

been assessed the same penalty of $252.95, plus interest of $212.87.[10]  Ex. 3.  After adding the

$252.95 and the $212.87 to the outstanding 2002 tax liability of $10,118, Plaintiff's total tax

indebtedness for 2002 was $10,583.82.  See Ex. 3.  By subtracting her final 2002 payment made

on September 14, 2003, in the amount of $10,452, from her remaining 2002 tax liability of

$10,553.82, Plaintiff owes an underpayment of $131.82.[11]  Id.

      Defendant also alleges if the $3,300 payment was properly applied to the 2003 tax year,

along with a $1,116[12] credit from the 2002 tax year that was then applied to the 2003 tax year on

April 15, 2005, "[P]laintiff is due an overpayment of $1,120.43 as of April 5, 2005."  Id. ¶ 10.

Defendant arrives at this number by adding Plaintiff's $900 payment on June 12, 2003, and the

$3,300 payment on September 10, 2003, totaling $4,200, and subtracting this from her 2003 tax

liability of $6,077 to get an outstanding liability of $1,877, as of April 15, 2004.  Martone Decl. ¶

3g; Martone Decl., Ex. 4, 2003 Interest & Penalty Detail Report, dated Jan. 15, 2009 ("Ex. 4").

By October 15, 2004, with interest accruing, Plaintiff owed Defendant $1,919.68, at which time

Plaintiff paid $1,924.  Ex. 4.  This resulted in an overpayment of $4.32, calculated by subtracting

$1,919.68 from $1,924.  Id.  Interest began accruing on this amount, and on April 15, 2005,

Defendant added refund interest in the amount of $.11; Defendant then owed Plaintiff $4.43.  Id.

---

[10]This interest is slightly higher than the interest assessed on the original 2002 tax
transcript (of $211.06) because it does not include the $3,300 payment that was improperly
applied to 2002.  See Exs. 1 & 3.

[11]Although Plaintiff does not outright dispute the $131.82, she does dispute that she owed
any tax penalty and interest as well as any alleged underpayment for 2002, and thus, she is
entitled to the $464.01.  See n. 3 & 8, supra.

[12]The Court notes that this number is $.02 shy, but it will account for that herein.  See
n. 5, supra; page 20, infra.

In addition, Defendant applied a credit of $1,116 to Plaintiff's account, showing that Defendant owed Plaintiff $1,120.43 (the $4.43 plus the $1,116) as an overpayment for 2003.[13]   Id.

According to Defendant, by subtracting the underpayment from the 2002 tax year, the $131.82 Plaintiff owed, plus interest, totaling $141.67, from the overpayment for the 2003 tax year in the amount of $1120.43, Defendant owed Plaintiff $978.76.  Martone Decl., Ex. 5, Adjusted 2002, 2003 Interest & Penalty Detail Report, dated Jan. 15, 2009 ("Ex. 5").  Defendant then added interest to that amount, and as of January 16, 2009, Defendant alleges it owed Plaintiff an overpayment in the amount of $1,272.48.  Def.'s Br. for Summ. J. at 5 n. 5; Ex. 5.  Therefore, when correctly applying Plaintiff's $3,300 check to the 2003 tax year, according to Defendant, it owes Plaintiff a refund of $1,272.48 as of January 16, 2009, plus interest accruing to date.  Def.'s S. of Facts ¶ 11; Ex. 4, 5.

### Procedural History

On November 14, 2006, Stonehill filed a Complaint against Mark W. Everson ("Everson"), Commissioner of the Internal Revenue Service ("IRS"), seeking: (1) a judgment in the amount of $1,116.02 for a "wrongful diversion" from a tax refund in 2006, plus interest and penalties; (2) $464.01, resulting from an underpayment to Defendant as part of her 2002 tax year and interest and penalties; (3) "treble damages in accordance with the [NJCFA in the amount of] $4,740.09, for Defendant's unconscionable business practices"; (4) reimbursement for all monies

---

[13]Although, Plaintiff argues at length she does not owe Defendant any tax liability for 2003,that argument is unnecessary, since the Defendant agrees.  Instead, as discussed herein, Defendant actually concedes it owes Plaintiff money.  Def.'s Br. for Summ. J. at 4.  Plaintiff claims that she no longer had a tax liability for 2003 because Defendant wrongfully diverted $1,116.02 from a $5,581 refund Plaintiff was supposed to receive.  Compl. ¶ 45.  Defendant admits it owes Plaintiff the $1,116 she requests and then some, $4.43.  Ex. 5.

expended by Plaintiff, including, but not limited to, postage and travel costs since December 2004 in an attempt to resolve all issues that are the subject of this litigation; (5) to enjoin Defendant from harassing Plaintiff in the future; (6) to prohibit Defendant from using its mission statement until it "can live up to [it]"; (7) a hand-written letter of apology from every agent or employee involved, directly or indirectly, in the handling of Plaintiff's problems as they relate to this action;[14] and 8) to have Defendant's Answer and Defenses stricken.  Compl. at 16-17.

Defendant's Answer was due on January 26, 2007, but was not filed until February 23, 2007.  Upon Defendant's request and Plaintiff's consent, on June 28, 2007, the Honorable Tonianne J. Bongiovanni, U.S.M.J. ("Judge Bongiovanni"), entered an order directing the Clerk of the Court to amend the pleadings to add "the United States of America" as a Defendant. Order, dated June 28, 2007.  In addition, the same day, Judge Bongiovanni denied Plaintiff's motion to vacate Defendant's Answer and have default judgment entered.  Order, dated June 28, 2007.  On February 27, 2008, the Court adopted Judge Bongiovanni's Report and Recommendation, dated January 30, 2008, and dismissed Everson as a Defendant pursuant to Fed. R. Civ. P. 12(b)(1), finding that "no transcript or other evidence suggests that Defendant

---

[14]This Court cannot enjoin Defendant from future acts of trying to collect taxes.  The IRS is in the business of collecting taxes and thus, preventing them from doing so would make its job obsolete.  See Rosson v. United States, No. 04-1423, 2005 U.S. App. LEXIS 4524, at *6-7 (10th Cir. Mar. 18, 2005) ("The Anti-Injunction Act prohibits suits to restrain the assessment or collection of taxes.  No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ." 26 U.S.C. § 7421).  Similarly, the Court is not in the business of ordering hand-written apology letters.  Plaintiff, being an attorney herself, surely knows that this requested relief is beyond the type of relief that this Court can award, and thus, relief pertaining to these requests will not be discussed any further.

Everson waived [sovereign] immunity."[15]  Order, dated February 27, 2008.  The only proper Defendant is the United States.

At a pretrial scheduling conference, Judge Bongiovanni ordered Defendant "to provide the Court with a status on settling this case by the week of July 4, 2007." Def.'s S. of Facts ¶ 13; Ex. II.  On July 6, 2007, counsel notified Judge Bongiovanni that additional time was needed until the week of July 23rd.  Def.'s S. of Facts ¶ 13; Ex. OO.  On July 23, 2007, Saiz was contacted about the status of settling the case and "[she] explained that she had recommended rejection of [P]laintiff's settlement offer." Id.; Ex. KK.  Plaintiff received a letter, dated August 14, 2007, notifying her that her settlement offer to Defendant, dated June 15, 2007, was rejected. Pl.'s Br. for Summ. J. at 4; Ex. KK.  By a letter dated November 6, 2007, Defendant submitted to Plaintiff a settlement proposal in the amount of $681, which Plaintiff allegedly rejected.[16]  Pl.'s Br. for Summ. J. at 4; Ex. OO.  On January 5, 2009, Defendant allegedly submitted to Plaintiff an offer of judgment pursuant to Fed. R. Civ. P. 68(a) and Plaintiff rejected the offer.  Def.'s S. of Facts ¶ 18; Saiz Decl. ¶ 18.

On December 11, 2008, Plaintiff filed a Motion for Summary Judgment, in which she also seeks to strike Defendant's Answer and Defenses because of discovery violations and/or

---

[15]Plaintiff alleges that Beatriz T. Saiz ("Saiz"), counsel for Defendant, provided an "unequivocal waiver" to waive Defendant's rights to dismiss Everson as a Defendant.  Pl.'s Br. for Summ. J. at 4.  However, Saiz contends that "[c]ounsel did not nor could she agree to waive subject matter jurisdiction and agree that Mark Everson should be a defendant in this case." Def's S. of Facts ¶ 12.

[16]Plaintiff argues that she was never contacted about a proposed settlement by Defendant. Pl.'s Br. for Summ. J. ¶ 15.

spoliation of evidence;[17] in addition, she appears to assert a claim under 42 U.S.C. § 1983.  Pl.'s

Br. for Summ. J. at 10.  She also filed a "Letter Brief in Support of [her] application for Rule 11

Sanctions."  Plaintiff's Brief for Rule 11 Sanctions ("Pl.'s Br. for Rule 11 Sanctions") at 9.  On

January 19, 2009, Defendant filed its Cross-Motion for Summary Judgment and Opposition to

Plaintiff's motion for summary judgment and sanctions.  This Court has jurisdiction over this

matter pursuant to 28 U.S.C. § 1331.  For the reasons stated herein, the Court grants Defendant's

Cross-Motion for Summary Judgment and awards Plaintiff a refund in the amount of $1,272.48

as of January 16, 2009 and interest accruing to date.  Further, the Court awards Plaintiff $.02 plus

interest dating back to February 3, 2006.  The Court denies Plaintiff's Motion and request for

sanctions under Rule 11.


## II.     Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing

the facts in the light most favorable to the non-moving party, the moving party is entitled to

judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d

Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P.

56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a

reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d

---

[17]Plaintiff also contends that Defendant has failed to provide certain information that was requested in a Joint Discovery Plan, filed with the Court in June 2007.  Pl.'s Br. for Summ. J. at 4.  Defendant claims that Plaintiff's discovery requests were sent to the IRS "to assist counsel in locating any responsive documents," but that it was "unable to locate any documents except those referred to in the responses to [P]laintiff's discovery."  Def.'s S. of Facts ¶ 15; Saiz Decl. ¶ 11.

418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In

determining whether a genuine issue of material fact exists, the court must view the facts and all

reasonable inferences drawn from those facts in the light most favorable to the non-moving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem,

298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect

the outcome of the suit under governing law."  Kaucher, 455 F.3d at 423.  Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue

of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met this burden, the non-

moving party must identify, by affidavits or otherwise, specific facts showing that there is a

genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258

(D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the non-

moving party must identify specific facts and affirmative evidence that contradict those offered

by the moving party.  Anderson, 477 U.S. at 256-57.  "A non-moving party may not 'rest upon

mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local

825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v.

Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present

"more than a scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v.

County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.

<u>Celotex</u>, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. Credibility determinations are the province of the fact finder. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    Discussion

There are no issues of material fact relevant to this dispute, and thus, only questions of law remain in these competing summary judgment motions. Stonehill moves for summary judgment on the grounds that: (1) Plaintiff's check for $2,865.14 is an accord and satisfaction and thus, Defendant is precluded from seeking additional sums from Plaintiff, (2) Defendant wrongfully diverted $1,116, mistakenly claims Plaintiff owes it $4.23 in accrued interest for 2003, and underpaid Plaintiff by $464.01 in the 2002 refund, (3) Defendant's Answer and Defenses should be stricken from the record for failing to provide discovery to Plaintiff, (4) Defendant violated Plaintiff's rights in violation of 42 U.S.C. § 1983, and (5) treble damages in accordance with the NJCFA are warranted for Defendant's unconscionable business practices. Pl.'s Br. for Summ. J. at 10. Also, Plaintiff seeks sanctions against Defendant, <u>inter alia</u>, under Rule 11 for litigating the case in bad faith and making misrepresentations to the Court. Pl.'s Br. for Rule 11 Sanctions at 8-9. In the United States Opposition and Cross-Motion for Summary Judgment, it seeks: (1) a determination that Plaintiff be awarded $1,272.48 due to the United States' error in misapplying Plaintiff's check in the amount of $3,300 to the 2002 tax year instead

14

of the 2003 tax year, (2) to dismiss Plaintiff's claims for damages for lack of jurisdiction, and (3)

a denial of Plaintiff's motion for sanctions under Rule 11.  Def.'s Br. for Summ. J. at 3.  The

Court will address the parties' arguments in turn below.


### A.       Plaintiff's Check for $2,865.14 as Accord and Satisfaction

As a preliminary matter, Plaintiff argues that she does not owe the IRS any money for the

2003 tax year because she tendered a check to Defendant in the amount of $2,865.14 marked by

"ACCORD for 2003" with an accompanying letter, which "clearly g[a]ve notice that the

[p]ayment constitutes settlement of [D]efendant['] claim."  Pl.'s Br. for Summ. J. at 11-12; Exs.

N, O, and P.  Plaintiff asserts that because Defendant accepted the check that she has met the

traditional elements of an accord and satisfaction: "[1] A dispute as to an amount of money

owed, [2] a clear manifestation of intent by the debtor to the creditor that the payment is in

satisfaction of the disputed amount and [3] acceptance of the satisfaction by the creditor."  United

States for Use in Glickfeld v. Krendel, 136 F. Supp. 276, 282 (D.N.J. 1955).  In Decker v. Smith

& Co., 88 N.J.L. 630, 634 (1916), the court held that when a check is tendered to the creditor in

full settlement and gives the creditor notice of the conditions, the creditor's acceptance and use of

the check establishes an accord and satisfaction."[18]  Plaintiff argues that "the controversy

surrounding the 2003 tax year monies was concluded when [D]efendant accepted, deposited, and

_____

[18]See also Hudson v. Yonker Fruit Co., 258 N.Y. 168, 179 (1932) (holding that settlement
of a disputed claim results when a party accepts the check whether the condition is expressly
declared on the check itself or in a cover letter); Chancellor, Inc. v. Hamilton Appliance Co.,
Inc., 175 N.J. Super. 345, 352 (Passaic County Ct. 1980) (holding that once the check was
deposited by the creditor it became payment in full for a disputed debt when the check was
clearly marked "paid in full").

cashed Plaintiff's [a]ccord check."  Pl.'s Br. for Summ. J. at 13 (citing <u>Decker</u>, 88 N.J.L. at 634).

Further, Plaintiff asserts that the Court should find that because the check settled the dispute

surrounding the 2003 controversy that "[a]ll action taken thereafter against Plaintiff by Defendant

constitutes improper and/or illegal action."  <u>Id.</u>  Plaintiff, however, mistakenly relies on

traditional creditor-debtor law and ignores Section 7122 of the Internal Revenue Code and

relevant case law.  In this case, as Defendant correctly argues, the Court cannot conclude that the

check tendered for $2,865.14 constitutes an accord and satisfaction.  <u>See</u> <u>United States v. Asmar</u>,

827 F.2d 907, 913 n. 7 (3d Cir. 1987) ("Any forgiveness or compromise of tax liability must be

effected in accordance with the provisions of Internal Revenue Code §  7122, 26 U.S.C. §

7122."); <u>see</u> <u>also</u> <u>Bowling v. United States</u>, 510 F.2d 112, 113 (5th Cir. 1975) ("[T]he provisions

for compromising tax cases are found in [§§] 7121 and 7122 of the Internal Revenue Code.

These provisions are exclusive and strictly construed.  Because of this exclusive method, no

theory founded upon general concepts of accord and satisfaction can be used to impute a

compromise settlement, and therefore none resulted from the government's acceptance and

cashing of appellant's check."); <u>Moskowitz v. United States</u>, 285 F.2d 451, 453 (Cl. Ct. 1961)

("[T]he statutory prescription of an exclusive method for compromising tax liabilities, any theory

founded on general concepts of accord and satisfaction cannot be utilized to impute a

compromise settlement to the agents of the Government"); <u>Laurins v. Comm'r Internal Revenue</u>

<u>Service</u>, 889 F.2d 910, 912 (9th Cir. 1989) ("The regulations and procedures for compromises

under 26 U.S.C. § 7122 are the exclusive method of settling claims").

    In <u>Bear v. Commissioner of Internal Revenue Service</u>, No. 93-70509, 1994 U.S. App.

LEXIS 6278, at *1-2 (9th Cir. Mar. 23, 1994), Bear argued that he "extinguished his 1984 and

1985 tax liabilities by tendering a check to the IRS in November 1985 which included on the back of the check: 'Endorsement of this draft constitutes agreement that all taxes, interest, penalties, or other indebtedness is paid in full through 11/30/85.'"  The Ninth Circuit explained that Section 7122(a) of the Internal Revenue Code is "the exclusive method of settling claims," and "[t]he Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense."  Id. at 2; 26 U.S.C. § 7122(a).  Further, the regulations necessitate that "offers in compromise shall be submitted on forms prescribed by the Internal Revenue Service which may be obtained from district directors of internal revenue."  26 C.F.R. § 301.7122-1(d).  The Ninth Circuit held that "[t]here [was] no accord and satisfaction from tax liability where the IRS cashes a taxpayer's check which contains a qualified endorsement."  Bear, 1994 U.S. App. LEXIS 6278, at *2.  In relying on the fact that "Bear failed to fill out the forms prescribed by the IRS regulations for settling claims with the IRS, the Court held that his check to the IRS was not sufficient to extinguish his tax liability."  Id.  In the instant case, Plaintiff submits that the Court should find that because the IRS cashed a check marked by the words "ACCORD for 2003" that it qualifies as an accord and satisfaction.  Id.  However, Plaintiff did not follow the IRS's exclusive method for compromising and settling claims pursuant to § 7122.  See Id.  As Defendant correctly argues, Plaintiff's check is insufficient to settle the tax liability as an accord and satisfaction regardless of the fact that Defendant accepted the check.  See Def.'s Br. for Summ. J. at 5.  Accordingly, the Court finds that the check for $2,865.14 does not constitute an accord and satisfaction and does not preclude Defendant from

seeking any outstanding tax liability from Plaintiff.  Thus, the Court must address the parties' arguments with respect to the misapplication of the $3,300 check surrounding the 2002 and 2003 tax years.

**B.      Misapplication of $3,300 to the 2002 tax year and proper application to the 2003 tax year**

Defendant concedes it erred: the payment made by Plaintiff for $3,300 in September of 2003 should have been applied to Plaintiff's 2003 tax year, rather than the 2002 tax year.  Def.'s Br. for Summ. J. at 4.  When Defendant applied the $3,300 payment to the 2002 tax year instead of the 2003 tax year, it resulted in an overpayment for 2002, and Defendant issued Plaintiff a refund of $3,299.01.  Martone Decl. ¶ 3e; Ex. 1.[19]  However, as Defendant correctly admits, Plaintiff's $3,300 check should have been applied to the 2003 tax year.  Def.'s Br. for Summ. J. at 4.  If Defendant had properly applied the $3,300 payment to the 2003 tax year rather than 2002, Plaintiff would have been liable for an underpayment of $131.82 in 2002, and an overpayment of $1,120.43 in 2003 would have resulted.  Id.; Ex. 3.

First, the Court will address Plaintiff's alleged underpayment of $131.82 in 2002.  Id.  As discussed above, Defendant calculates this number by subtracting Plaintiff's payments of $6,000, $4,250, $9,050, $9,500, from her tax liability of $38,918, in 2002, leaving an outstanding

---

[19]Defendant explains that the $3,299.01 refund resulted when it subtracted all of Plaintiffs payments in 2002 (totaling $42,552, which includes her payment of $3,300) from Plaintiff's tax liability of $39,382.01 (which includes the $464.01 failure to pay penalty and interest assessed). Martone Decl. ¶ 3b, c, d; Ex. 1.  Thus, an overpayment resulted and Defendant refunded Plaintiff $3,169.99, plus interest in the amount of $129.02, for a total of $3,299.01, which is the amount shown on the refund check that the IRS issued her.  See Martone Decl. ¶ 3e; Ex. 1.

liability of $10,118.  Id.  After assessing interest of $212.87[20] and a penalty of $252.95 because Plaintiff failed to pay her taxes on time, Plaintiff's total tax indebtedness for 2002 was $10,583.82.  See Ex. 3.  Subtracting Plaintiff's payment of $10,452 from the tax liability of $10,583.82, leaves an underpayment of $131.82.  Ex. 2; Ex. 3.  Therefore, the Court finds that if Defendant properly applied Plaintiff's $3,300 check to 2003, Plaintiff would have underpaid $131.82, as of September 14, 2003, in the 2002 tax year.  Exs. 3 & 5.

Second, the Court will review Plaintiff's alleged overpayment in the 2003 tax year. Plaintiff's tax liability for the 2003 tax year was $6,077.  Ex. 2.  Plaintiff paid $900 on June 12, 2003, plus the $3,300 from September, 2003, totaling $4,200; thus, on April 15, 2004, Plaintiff owed Defendant $1,877.  Martone Decl. ¶ 3g; Ex. 4.  By October 15, 2004, with interest accruing, Plaintiff still owed Defendant $1,919.68, at which time Plaintiff paid $1,924; this resulted in an overpayment of $4.32.  Id.  Interest began accruing on this amount, and on April 15, 2005, Defendant added refund interest in the amount of $.11, now owing Plaintiff $4.43.  Id. In addition, Defendant states that it applied a credit of $1,116 to Plaintiff's account, showing that Defendant owed Plaintiff $1,120.43 (the $4.43 plus the $1,116) as an overpayment for 2003.  Id.; Ex. U.

After subtracting the underpayment from the 2002 tax year, the $131.82 Plaintiff owed, plus interest, totaling $141.67, from the overpayment for the 2003 tax year in the amount of $1120.43, plus interest, as of January 16, 2009, Defendant owed Plaintiff an overpayment in the amount of $1,272.48.  Def.'s Br. for Summ. J. at 5 n. 5; Ex. 5.  Accordingly, the Court finds

---

[20]This interest assessment was slightly higher than that originally assessed because it was calculated based on the amount Plaintiff failed to pay, omitting the $3,300 payment.  See n. 10, supra.

when correctly applying Plaintiff's $3,300 check to the 2003 tax year, Defendant owes Plaintiff a refund of $1,272.48, as of January 16, 2009, plus interest accruing to date.  However, because Defendant failed to include the $.02 – from the $1,116.02 it withheld from Plaintiff's refund of $5,581 – because Martone omitted it from his calculations, see n. 5, supra., the Court also awards Plaintiff $.02, plus interest accruing from February 3, 2006.

Plaintiff argues inconsistently that Defendant owes her an additional $464.01 because the "money due from Plaintiff for 2002 was overpaid by $3,634, but the 2002 refund check received by Plaintiff in August 2004 was for $3,169.99 (when the interest of $129.02 is factored out) resulting in an underpayment to Plaintiff of $464.01, which is still due and owing from Defendant." Compl. ¶ 36.  However, Stonehill's argument rests on applying the $3,300 payment to the 2002 tax year and not applying it to the 2003 tax year as, she admits, it should have been. Id. ¶ 3.  Plaintiff mistakenly argues that she should not have to pay the failure to pay penalty and interest because she did not underpay.  Compl. ¶ 36; Def's Br. for Summ. J. at 6.  Plaintiff offers her own bare allegation to support her argument that Defendant, by way of Ms. Armstrong, admitted to her on the telephone that she did not owe any liability in 2002 and that the failure to pay penalty and interest was improperly assessed.  See Id.; see also n. 8, supra. Stonehill, however, was assessed a penalty in the amount of $464.01 because she failed to pay her taxes on time in 2002, and the proper application of the $3,300 check to the 2003 tax year only more clearly illustrates Plaintiff's underpayment for 2002 – and thus, that it was untimely.  Exs. 1 & 2. Accordingly, the Court denies Plaintiff's request as it would be incorrect to refund this properly assessed penalty and interest back to Plaintiff.

### C.      Additional Relief

#### 1.      Discovery Issues

Plaintiff claims that because Defendant failed to produce certain evidence, Defendant's

Answer and Defenses should be struck for discovery violations and/or spoliation of evidence.

See Pl.'s Br. for Rule 11 Sanctions at 13-14.  Specifically, Plaintiff asserts that Defendant failed

to produce a copy of the Plaintiff's IRS file that contained data in the file pertinent to this case.

Pl.'s Br. for Summ. J. at 13.  Plaintiff filed a formal discovery request pursuant to Saiz's

instruction, to which Defendant responded that the request was "overbroad and irrelevant."  Id.

Plaintiff argues that the requested file:

> contains probative information and is replete with errors, based on information
> divulged by defendant [and] [s]ome of the threshold issues surround the two
> checks transmitted to [D]efendant in September 2003, which [D]efendant falsely
> claims were both sent with Plaintiff's 2002 tax return [and] that Ms [sic] Saiz
> wrongly alleged in court that Plaintiff owes [D]efendant $4.00.

Id.  Plaintiff further argues that Defendant's alleged refusal to send discovery materials to

Plaintiff constitutes "spoliation of evidence."  Id. at 15.  Plaintiff asks the Court to find that

Defendant failed to comply with a discovery request and to sanction Defendant pursuant to Fed.

R. Civ. P. 37(b)(2)(A)(i)-(vi).  Id.

The Court, however, has already dealt with the issues in an Order, dated February 27,

2008.  Order, dated Feb. 27, 2008.  The Court stated that "it is unclear from Plaintiff's Motion

whether Plaintiff served formal requests for discovery on the Government, but even if such

discovery requests are ripe for adjudication, they are non-dispositive, not appropriate for

adjudication in the Report and Recommendation and must be addressed to Magistrate Judge

Bongiovanni in the first instance."  Id.  As Defendant correctly notes, "Plaintiff did not challenge

21

the United States' discovery responses until the motion for summary judgment [and] Plaintiff should have raised these concerns prior to the close of discovery." Def.'s Br. for Summ. J. at 11. Again, this Court reiterates that any relief regarding discovery matters was not pursued before the magistrate judge prior to filing a motion for sanctions. Furthermore, sanctions are not warranted; the lack of documentation, even if true, did not prejudice the Plaintiff. Defendant concedes that the $3,300 check was applied to the wrong year and should have been applied to the 2003 tax year instead. Further, Defendant is not contending that Plaintiff owes it $4.00, but rather that the IRS owes Plaintiff $4.43. Accordingly, Plaintiff's request for relief regarding discovery matters is denied.

### 2.      Plaintiff's NJCFA and § 1983 claims

Plaintiff seeks treble damages from the United States under the NJCFA. Compl. at 16. Defendant argues that this claim is barred by the doctrine of sovereign immunity because "[t]he United States had not consented to be sued under this statute and that Court can not award damages pursuant to the statute." Def.'s Br. for Summ. J. at 8. The United States, its agencies, or departments cannot be sued under the doctrine of sovereign immunity unless it expressly consents to be sued. United States v. Testan, 424 U.S. 392, 399 (1976). For the United States to consent to be sued, sovereign immunity cannot be implied and must be unambiguously expressed. United States v. Dalm, 494 U.S. 596, 608 (1990). In the instant case, the United States has not consented to be sued pursuant to the NJCFA. Therefore, this Court lacks jurisdiction to award such damages, and Plaintiff's claim pursuant to the NJFCA is dismissed. In her many criticisms of the United States' conduct, Plaintiff throws in the kitchen sink of

claims.  She alleges in her brief that Defendant violated her rights pursuant to 42 U.S.C. § 1983.

Pl.'s Br. for Summ. J. at 17.  The Court notes that this claim, which is not asserted in Plaintiff's

Complaint, is not properly before the Court on this motion.  See Bell v. City of Philadelphia, 275

Fed. App'x 157, 160 (3d Cir. 2008 ) ("A plaintiff 'may not amend his complaint through

arguments in his brief in opposition to a motion for summary judgment'" (quoting Shanahan v.

City of Chi., 82 F.3d 776, 781 (7th Cir. 1996)).  Nonetheless, for the sake of completeness and to

lay this issue to rest, the Court will address Plaintiff's conclusory assertions.  Plaintiff argues that

she should be given relief under 42 U.S.C. § 1983 because Defendant's wrongful acts, inter alia,

"constitute bad faith, theft by the wrongful taking of monies legally due to Plaintiff and extortion

for compelling payment not legally due."  Pl.'s Br. for Summ. J. at 17.  She argues that her rights

were violated and Section 1983 serves a remedial role "'through which a party may seek relief

for the deprivation of a constitutional [or federal statutory] right.'"  Id. at 17-18 (quoting

Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979).

The Court will address the Plaintiff's § 1983 claim as a Bivens-type claim, which pertains

to Federal officials, rather than a Section 1983 claim which pertains to employees acting under

state law.  See Bivens v. Six Unkown Named Agents of Federal Bureau of Narcotics, 403 U.S.

388 (1971); Def.'s Br. for Summ. J. at 2 n. 1.  The United States, however, cannot be sued for

damages for purported violations of the Constitution.  See Couden v. Duffy, 446 F.3d 483, 499

(3d Cir. 2006) (affirming dismissal of Constitutional claims against the United States).

"Bivens-type actions against the United States are routinely dismissed for lack of subject matter

jurisdiction."  Keene Corp. v. United States, 700 F.2d 836, 845 n. 13 (2d Cir. 1983).  In

Schweiker v. Chilicky, 487 U.S. 412, 420 (1988), the Supreme Court held that no Bivens-type

remedy exists when Congress already has supplied "adequate remedial mechanisms for constitutional violations that may occur in the course of [the government's] administration." Congress enacted 26 U.S.C. § 7422 for refund suits to provide a remedy against the United States to obtain refunds, and thus, Plaintiff's exclusive remedy is under that statute.  See Jaffee v. United States, 592 F.2d 712, 717 (3d Cir. 1979).  Therefore, Plaintiff's § 1983 "claim" against the United States is dismissed.

### D.      Costs and Sanctions under Rule 11

Defendant claims that Plaintiff's request for sanctions is inappropriate because no misrepresentations were made to Plaintiff or the Court.  Def.'s Br. For Summ. J. at 3.  As the Court grants the United States' Cross-Motion, Plaintiff's request for costs, fees, and sanctions under Rule 11 is denied.[21]  See United States v. Schwartz, No. 91-6999, 1992 U.S. Dist. LEXIS 239, at *2 (E.D. Pa. Jan. 8, 1992) (holding that Defendant's motion for sanctions against United States are denied).

The Court is constrained to note that although the United States was in error, it clearly conceded its mistakes early, and throughout the discovery process.  Furthermore, in the context of the escalation of costs and expenditures of attorney and judicial time, Plaintiff, in the manner in which she chose to litigate this action, including her pursuit of legal claims that are not viable, played a substantial role in the costs incurred.

---

[21]Further, the Court notes Plaintiff did not abide by the proper procedure when seeking to impose sanctions under Rule 11.  See generally Fed. R. Civ. P. 11.

**IV.    Conclusion**

For the foregoing reasons, the Court denies Plaintiff's Motion for Summary Judgment and request for sanctions under Rule 11.  The Court grants Defendant's Cross-Motion for Summary Judgment, and Plaintiff is awarded an overpayment in the amount of $1,272.48, as of January 16, 2009, plus interest accruing to date, and $.02, including interest dating back to February 3, 2006.


<u>/s/ Freda L. Wolfson</u>
Freda L. Wolfson, U.S.D.J.

Dated:  July 6, 2009

25